# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

***

GAIL ALBANESE,

                Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                Defendant.

Case No. 2:16-cv-02350-JAD-VCF

**REPORT & RECOMMENDATION**

       This matter involves Plaintiff Gail Albanese's appeal from Defendant Nancy A. Berryhill's (the "Commissioner's") final decision denying Albanese disability insurance benefits. Before the Court are Albanese's Motion for Summary Judgment (ECF No. 21), the Commissioner's Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal (ECF No. 22), and Albanese's Replies (ECF Nos. 24, 25 and 26). Based on the Court's review of the record in this case and the briefs of the parties, the Court concludes that the decision of the Commissioner should be reversed and the case remanded for the reasons stated below.

## I. Background

       Albanese is a 66-year-old female who applied for Social Security Disability Insurance benefits on July 11, 2011, alleging disability beginning March 1, 2007. *See* Admin. Rec. at 288. Albanese claims that she became disabled due to multiple sclerosis, neuropathy, fibromyalgia, arthritis, hypertension, and depression. *Id.* at 100. Her claim was denied initially and upon reconsideration. *Id.* at 146, 151. In October 2012, Albanese appeared and testified at a hearing in Las Vegas. *Id.* at 66. Shortly after the hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision. *Id.* at

1

113. Albanese appealed. The Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ. *See* Admin. Rec. at 136. The ALJ held a second hearing in February 2015, at which Albanese, Albanese's non-attorney representative, and a vocational expert (Dr. Robin Generaux) appeared and testified. *Id*. at 45. Albanese amended the alleged onset of disability from March 1, 2007 to July 1, 2010 due to issues about documented substance abuse prior to July 2010. *Id*. at 46-48. In May 2015, the ALJ issued an unfavorable decision. *Id*. at 20. Albanese appealed. The Appeals Council declined review in August 2015, making the ALJ's decision final. The case is now before the Court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Disputed Issues

Albanese raises the following five issues as grounds for reversal and remand:

1. Whether the ALJ's finding that Albanese did not have a medically determinable impairment of multiple sclerosis is supported by substantial evidence?

2. Whether the ALJ's finding that Albanese did not have a medically determinable impairment of fibromyalgia is supported by substantial evidence?

3. Whether the ALJ's finding that Albanese did not have a medically determinable mental impairment of depression is supported by substantial evidence?

4. Whether the ALJ properly considered the combined effect of Albanese's impairments?

5. Whether the ALJ used the Special Procedures pursuant to 20 C.F.R. § 404.1520a?

## III. Standard of Review

Social security claimants have a constitutionally protected property interest in social security benefits. *See Mathews v. Eldridge*, 424 U.S. 319 (1976); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). The Social Security Act authorizes the District Court to review the

Commissioner's final decision denying benefits. *See* 42 U.S.C. § 405(g); *see* also 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

A District Court's review of Social Security determinations is limited by three principles. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014))). First, courts generally "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id*.

Second, courts will only disturb the Commissioner's decision to deny benefits if the decision (1) is not supported by substantial evidence or (2) is based on legal error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" of evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) (defining "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the court must uphold the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This means that the Commissioner's decision will be upheld if it has any support in the record. *See*, e.g., *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1988) (stating that the court may not reweigh evidence, try the case *de novo*, or overturn the Commissioner's decision if the evidence preponderates against it).

The third principle is that "[e]ven when the ALJ commits legal error, we uphold the decision where that error is harmless," meaning that "it is inconsequential to the ultimate nondisability

3

determination," or that, despite the legal error, "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1099). Ninth Circuit precedent, however, has been cautious about when harmless error should be found. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). Courts have a duty not to substitute their own discretion for that of the agency as "the decision on disability rests with the ALJ and the Commissioner … in the first instance, not with a district court." *Id*. at 1173. So, although the agency will not be faulted merely for explaining its decision with "less than ideal clarity," courts still require the agency to set forth the reasoning behind its decisions in a way that allows for meaningful review. *See Brown-Hunter*, 806 F.3d at 492. Courts can affirm the agency's decision to deny benefits only on the grounds invoked by the agency. *Id*.; *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). A clear statement of the agency's reasoning is essential.

Ninth Circuit precedent prohibits a reviewing court from making independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless. *Id*. District Court review is limited to the reasons the ALJ asserts. *Id*. If the ALJ fails to specify his reasons for finding a claimant's testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly "substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions." *Id*. (quoting *Treichler*, 775 F.3d at 1103). Because courts cannot engage in such substitution or speculation, such error will usually not be harmless.

### IV. The Sequential Evaluation

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to

4

result in death or which has lasted or is expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

The Commissioner "has established a five-step sequential evaluation process for determining whether a person is disabled." *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The five-step process is as follows. First, the claimant must show that he or she is not currently engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is, then disability benefits are denied. *Id*. Second, if the claimant is not currently engaged in substantial gainful activity, the claimant must prove he or she has a severe medical impairment, or combination of impairments, that "significantly limits his [or her] physical or mental ability to do basic work activities." *See* §§ 404.1520(c), 416.920(c); *see also Yuckert*, 482 U.S. at 141. The ability to do basic work activities is defined as "abilities and aptitudes to do most jobs." *Yuckert*, 482 U.S. at 141.

Third, the claimant must show that his or her impairments meet or equal a listed impairment in the social security regulations at 20 C.F.R. Part 404, Subpart P, App. 1, and meet the duration requirement. *See* § 404.1520(a)(4)(iii). If the claimant makes this showing, he or she is presumed disabled without considering age, education, or work experience. *See* §§ 404.1520(d), 416.920(d).

Otherwise, a residual functional capacity ("RFC") assessment will be conducted to determine what the claimant's physical and mental limitations are in a work setting. *See* § 404.1520(e), 416.920(e). The RFC assessment is a function-by-function examination of a claimant's ability to perform the physical and mental demands of work-related activities on a "regular and continuing basis" despite limitations from impairments. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). The standard for "regular and continuing basis" is measured by an eight-hour-a-day, five-day-a-week work schedule. *Id*. The RFC is used to determine "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). The RFC tests a claimant's physical, mental, and other abilities

affected by the claimant's impairments. *See* § 404.1545(b). All relevant medical evidence from the record will be used to determine a claimant's RFC, including evidence of impairments that are not severe. *See* § 404.1545(a). The totality of all medical and non-medical evidence relating to a claimant's impairment(s) will be assessed to determine the "total limiting effects" of both severe and non-severe impairments. *See* § 404.1545(e).

Once the assessment has concluded, the results will be used to determine what job exertion category the claimant can perform. *See* 20 C.F.R. § 404.1567. There are five job exertion categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. *Id.* The RFC and subsequent job exertion category certification are then used to determine if the claimant satisfies the final two steps of the five-step evaluation process. *See* §§ 404.1545(a)(5)(i)-(ii).

The fourth step of the process requires the claimant to prove that his or her impairments prevent him or her from performing the physical and mental demands of his or her past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The RFC will be used to determine if the claimant can in fact perform their past relevant work, based on what job exertion category that job is classified under. *See* § 404.1545. A claimant will pass step four only if their RFC limits their job exertion to a category lower than the exertion level required to perform their past relevant work. *Id.*

If the claimant satisfies his or her burden under the previous four steps, the burden then shifts to the Commissioner at step five to prove that the claimant is capable of performing some other substantial gainful work that exists in significant numbers in the national economy. *See* § 404.1520(g); *see also Yuckert*, 482 U.S. at 145. The claimant's RFC, age, education, and past work experience, are all factors considered to determine if a claimant is capable of performing some other work in the national economy. *Id.* If the Commissioner proves that a claimant can perform some other suitable work, the claimant is given a chance to rebut by showing he or she is, in fact, unable to perform that work. *Id.*

6

### V. The ALJ's 2015 Decision

The ALJ followed the five-step sequential evaluation process set forth at §§ 404.1520 and 416.920 and issued an unfavorable decision against Albanese on May 18, 2015. *See* Admin. Rec. at 20. At step one, the ALJ found that Albanese had not engaged in substantial gainful activity from her amended alleged onset date of July 2010 through her date last insured of September 30, 2011. *Id*. at 25. At step two, the ALJ found that Albanese had the following severe medical impairment for Social Security purposes: a history of neuropathy (§ 404.1520(c)). *Id*. The ALJ found, however, that Albanese did not have the following severe medically determinable impairments: multiple sclerosis, fibromyalgia, osteoarthritis, hypertension, hyperthyroidism, and psychiatric disorders. *Id*. at 25-26.

At step three, the ALJ determined that Albanese did not have an impairment, or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. *Id*. at 28. Continuing the process at step three, the ALJ reviewed the evidence within the record and found that from July 2010 through September 30, 2011, Albanese demonstrated the RFC "to perform light work … except she could occasionally climb stairs and ramps and never climb ladders, ropes, and scaffolds; she could occasionally balance, stop, kneel, crouch, and crawl." *Id*.

At step four, the ALJ, relying on the testimony of vocational expert Dr. Robin Generaux, found that Albanese was able to perform her past relevant work as a furniture sales person and food service director. *Id*. at 29. Based on these findings, the ALJ concluded that Albanese was not disabled from July 2010 through September 30, 2011, and denied her application for disability insurance benefits. *Id*.

/ / /

/ / /

/ / /

# VI. Discussion

## A. Preliminary Issues

The Court begins by addressing Albanese's arguments that the ALJ erred in finding her testimony not fully credible and in assigning little weight to her treating physician, Dr. Jerold L. Hagen.

### a. Credibility Assessment

The Court begins its review with the ALJ's determination that Albanese's testimony as to the intensity, persistence, and limiting effects of her symptoms was not credible. Albanese objects to this determination on the ground that the ALJ failed to provide specific, clear, and convincing reasons why she is not credible. *See* ECF Nos. 21 at 24; 26 at 8-9.

The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted).

Second, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted). Absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). To support a finding of less than fully credible, the ALJ is required to point to specific facts in the record that demonstrate that the individual's symptoms are less severe than she claims. *See Vasquez*, 572 F.3d at 592. General

findings are not sufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In weighing a claimant's credibility, the ALJ may consider factors such as objective medical evidence, reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, the claimant's daily activities, and the claimant's treatment history. *See Orn v. Astrue*, 495 F.3d 625, 636-639 (9th Cir. 2007); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). If the "ALJ's credibility finding is supported by substantial evidence in the record, [a court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).[1]

The ALJ made an adverse credibility determination against Albanese based on inconsistent statements concerning symptoms, daily activities, and lack of objective medical support. *See* Admin Rec. at 23-25. These considerations have been found to be proper by the Ninth Circuit. *See e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although a lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (noting that an ALJ may permissibly consider the claimant's daily activities in making an adverse credibility determination); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (same for inconsistent statements); *Ghanim*, 763 F.3d at 1163.

The ALJ's credibility findings are supported by "more than a mere scintilla" of evidence. *See* Admin Rec. at 23-26. The ALJ noted Albanese's 2011 statements that her conditions did not affect her ability to remember, concentrate, understate, follow instructions, and get along with others. *Id*. at 23,

---

[1] At the time of the ALJ's decision, the credibility analysis was governed by SSR 96-7p. Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. Neither party has raised the issue of whether SSR 16-3p or SSR 96-7p governs the Court's review of the ALJ's evaluation of Albanese's statements regarding the intensity, persistence, and limiting effect of her symptoms. The ALJ's decision regarding Albanese's claim was issued on May 18, 2015. Thus, SSR 96-7p governed the ALJ's decision and the Court will review the ALJ's decision under the guidance provided in SSR 96-7p.

312.  The ALJ compared these statements with other allegations that Albanese has made about the severity of her mental limitations.  *See, e.g.*, Admin. Rec. at 298 ("I have difficulty with concentration, focus and memory.").  The ALJ also found that the 2011 statements of Albanese's sister stating that Albanese "could follow instructions, pay attention, and get along with others" was inconsistent with Albanese's allegations about her mental limitations.  *See* Admin. Rec. at 304-305.**[2]**

The ALJ also found that Albanese's pain and symptom testimony was inconsistent with her daily activities.  *Id*. at 24.  Daily activities that are inconsistent with alleged symptoms are a relevant credibility determination.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *but see Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("[T]he mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.").  The ALJ noted that Albanese described "how she was limited in her ability to perform activities such as dressing, preparing complex meals, showering, going to the casino, dancing, and bowling."  *See* Admin. Rec. at 24.  But Albanese reported that she dusted, loaded the dishwasher, did the laundry, prepared simple meals, shopped for groceries, personal care items, and household items in stores, watched television, read, and did crossword puzzles.  *See* Admin. Rec. at 24.  The ALJ found that these activities were not consistent with Albanese's allegations about her limitations.

The ALJ also found that Albanese's pain and symptom testimony was inconsistent with the medical evidence.  *Id*. at 24-25.  The ALJ discussed in narrative form how the medical records show that

---

[2] The ALJ gave specific reasons for giving little weight to the lay witness testimony of Albanese's sister, Connie Searle.  *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ noted that Searle's testimony was not supported by objective medical evidence.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (lay testimony inconsistent with medical evidence is a germane reason to reject lay testimony).  The ALJ also noted that Searle could not be considered a disinterested witness, and that her statements were likely colored by affection for Albanese.  *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (lay witness's close relationship with and desire to help claimant can be a basis for rejecting lay testimony).  Both of these reasons are germane to the witness and backed by evidence in the record.  The ALJ therefore did not err in giving little weight to the testimony of Albanese's sister.

Albanese overall treatment history fails to support her allegations.  *Id.*  The ALJ noted that Albanese neither required nor sought treatment indicative of the severity of the symptoms she described.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").  The ALJ also noted that Albanese "told her treating physician she was doing fine on medication."  *See* Admin Rec. at 26; 661.  While "[o]ne examination revealed [Albanese] had some lower extremity weakness," the ALJ specifically found that "[h]er only treating physician stated that he had no objective evidence that the claimant had a medically determinable diagnosis of multiple sclerosis."  The ALJ concluded that the "medical evidence does not support" Albanese's allegations.  *Id.*  While Albanese may have wanted the ALJ to interpret the evidence differently, the ALJ did not err in finding her testimony less than fully credible.

### b.  Weight Afforded to Opinions

Albanese challenges the ALJ's decision to give limited weight to the opinion of her treating physician, Dr. Jerold Hagen, and to give significant weight to Disability Determination Services ("DDS") non-examining consultants.  *See* ECF No. 21 at 15, 19.  Albanese argues that the ALJ made these findings without support from the record.

A treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with other substantial evidence in the record.  *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th

Cir. 2001).[3] The opinion of a treating physician is not necessarily conclusive as to the existence of an impairment or the ultimate issue of a claimant's disability. *See, e.g.*, *Thomas*, 278 F.3d at 956. When evidence in the record contradicts the opinion of a treating physician, the ALJ must present "specific and legitimate reasons" for discounting the treating physician's opinion, supported by substantial evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *See Thomas*, 278 F.3d at 956-957. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Id.*

Albanese argues that the ALJ provided insufficient reasons for discounting the opinion of Dr. Hagen. The Commissioner disagrees. The Commissioner contends that the record supports the ALJ's findings with respect to the infrequency of Dr. Hagen's treatment of Albanese, that Dr. Hagen "relied heavily" on Albanese's subjective complaints, and that Dr. Hagen's findings were not supported by the medical record (including Dr. Hagen's treatment notes). *See* ECF No. 22 at 7-8. As such, the Commissioner contends that the ALJ did not err in discounting the opinion of Dr. Hagen. *Id.*

The Court agrees with the Commissioner. The ALJ discounted Dr. Hagen's opinion based on, among other things, (1) Dr. Hagen's reliance on Albanese's subjective complaints, (2) the lack of support in the medical record, and (3) Dr. Hagen's infrequency of treatment of Albanese. *See* Admin. Rec. at 24, 28-29. Under Ninth Circuit precedent, these are proper factors for an ALJ to consider. *See, e.g.*, *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (finding that an ALJ may

---

[3] If an ALJ opts to not give a treating physician's opinion controlling weight, the ALJ must apply the factors set out in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(6) in determining how much weight to give the opinion. These factors include: length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion.

properly discount a doctor's opinion premised to a large extent on the claimant's subject complaints, when those allegations have been properly discounted); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (stating that an ALJ may reject a treating physician's opinion where it relies largely on a claimant's discredited self-reports, rather than on objective clinical evidence); *Connett*, 340 F.3d at 875 (same for lack of support in the physician's own treatment notes); *Thomas*, 278 F.3d at 957 (an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

Substantial evidence exists in the record to support those findings. As to Albanese's subjective complaints of disability, the ALJ found her testimony to be not entirely credible and this Court has found that determination supported by "more than a mere scintilla of evidence." Dr. Hagen did not see Albanese very often during the period at issue. *See* Admin. Rec. at 667. He stated that he had seen Albanese only twice in three years and that Albanese called the office frequently for renewal of her medications. *Id*. The ALJ concluded "Dr. Hagen relied heavily on the claimant's subjective reports of symptoms and limitations, both while treating the claimant and completing the opinion form, as his treatment notes contain few actual examinations of the claimant." *Id*. at 28. With respect to Dr. Hagen's opinion concerning Albanese's mental limitations, the ALJ explained that Dr. Hagen's opinion is not in his area of specialty, as he is not a psychiatrist. *Id*. The ALJ did acknowledge that Dr. Hagen does prescribe psychotropic medications. *Id*. The ALJ concluded that the record (including Dr. Hagen's treatment notes) did not support the limitations he opined. *See, e.g*., ECF No. 24-25, 28-29. The ALJ articulated clear and convincing reasons supported by substantial evidence in discounting the opinion of Albanese's treating physician. It was not error to do so.

///

///

**B. Whether the ALJ's Finding That Albanese did not Have a Medically Determinable Impairment of Multiple Sclerosis is Supported by Substantial Evidence?**

The ALJ found at step two that Albanese did not have a medically determinable impairment of multiple sclerosis because there was no objective medical evidence that confirmed she had the disease. *See* Admin. Rec. at 25. Albanese challenges this finding as not supported by substantial evidence.

At step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence established that Albanese did not have a medically severe impairment or combination of impairments. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Yuckert*, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *See Smolen*, 80 F.3d at 1290 (internal quotation marks omitted).

In his report, the ALJ found that although Albanese "stated she had multiple sclerosis and her treating physician Dr. Hagen stated the claimant had multiple sclerosis," there was "no objective medical evidence in the record that confirms she actually had the disease." Admin. Rec. at 25. The ALJ relied on a document entitled "treating source information" that was filled out by Dr. Hagen in September 2011. In that document, Dr. Hagen states that Albanese "was told in 1984 that she has [multiple sclerosis] – I have no documentation of that. [Albanese] [h]as never wanted formal work-up." *Id*. at 667. "With this lack of objective evidence," the ALJ found that Albanese did "not have a medically determinable impairment of multiple sclerosis, as all such documented mentions of the condition in the record resulted from the claimant's subjectively reported medical history rather than evidence from an acceptable medical source." *Id*. at 25.

Albanese argues that the ALJ failed to discuss the results from two multiple sclerosis lab panels which she claims conclusively show that she has multiple sclerosis. *See* ECF Nos. 21 at 13-14; 26 at 5. Albanese further asserts that Dr. Hagen and neurologist Dr. John G. Schmidt used their observations with the results of the lab to find Albanese has multiple sclerosis. *Id*. Albanese also points to a positive result on a Romberg test that was conducted. *Id*. Albanese's arguments have some merit. The ALJ's one-paragraph explanation for finding Albanese did not have multiple sclerosis states in general fashion that "there is no objective medical evidence in the record that confirms she actually had the disease" and "all such documented mentions of the condition in the record resulted from the claimant's subjectively reported medical history rather than evidence from an acceptable medical source." *See* Admin. Rec. 25. Although the ALJ does not provide the ideal level of detail and explanation for the evidence he broadly refers to in his decision, the ALJ's finding is supported by the record.

In March 2008, Albanese went to Dixie Regional Medical Center ("DRMC") to treat injuries she sustained for alcohol abuse. *See* Admin. Rec. at 378-379. Dr. Hagen examined Albanese and stated in a report that Albanese was "told in the past that she had multiple sclerosis … following a spinal tap in 1984. However, she never has had symptoms of that and I think that was not a correct diagnosis." *Id*. A CT scan of the brain during the hospital admission showed nothing significant. *Id*. During another admission to the DRMC in February 2009, also for a fall from alcohol use, a CT scan of Albanese's brain showed deep white matter subtle low attenuation changes in the front lobes (unchanged from the CT scan in March 2008) and cerebellum atrophy (consistent with her age), but no acute findings. *Id*. at 458.

In May 2009, physician Dr. Paul D. Havens examined Albanese and reported that Albanese's "old records are not available so I cannot determine the reason for her previous diagnosis of multiple sclerosis. She will be sent … [to] a neurologist for further evaluation of this problem to determine if she

indeed does have multiple sclerosis …" *Id*. at 570. The following month, neurologist Dr. Schmidt examined Albanese and assessed that Albanese's allegation of multiple sclerosis was "questionable." *Id*. at 542. Dr. Schmidt recommended further tests, including an MRI of her head. *Id*. An MRI of Albanese's brain was conducted in July 2009. *Id*. at 544. Results showed no evidence of acute intracranial hemorrhage, mass, or acute infarction. *Id*. Scattered foci or signal alteration were noted which placed multiple sclerosis in the differential. *Id*. However, active lesions were not present. *Id*. The only recommendations were correlation and follow up as needed. *Id*.

In July 2009, a multiple sclerosis panel was conducted on Albanese. Results fell within the reference ranges in Serum and Cerebral Spinal Fluid (CSF) Immunoglobulin G at "1050" and "2.4." *See* Admin. Rec. at 558-559. In addition, there were multiple other findings in the reference ranges ascertained in Albumin, Myelin Basic Protein, and the like, with a positive finding in the CSF oligoclonal band only. *Id*. The report stated that "oligoclonal bands are present in over 90% of patients with [multiple sclerosis]," however, this may only indicate viral or bacterial issues. *Id*. at 559; 476-77. The Court also notes that a multiple sclerosis panel conducted in 2006 had similar findings. *Id*. at 446-47. It appears that Dr. Hagen did see the results from the 2009 lab panel. *Id*. at 692. Dr. Hagen stated Albanese "did have positive oligoclonal banding on the LP. I don't have a copy of the MRI scan." *Id*. Dr. Hagen assessed Albanese with [multiple sclerosis]" and recommended that "she get back to Dr. Schmidt for whatever therapy he would recommend for the [multiple sclerosis]." *Id*. Dr. Hagen did not "have any record of … [Dr. Schmidt's] recommendation." *Id*. at 667. The Court's review of the administrative record failed to show that Albanese followed up with Dr. Schmidt or requested a formal work up.

The ALJ did review the lab reports, opinions, and medical evidence mentioned above. The details and discussion which Albanese argues was lacking, however, was included in his first decision.

The Appeals Council remanded the ALJ's first decision for a few limited reasons. Albanese correctly points out that the "first decision was remanded because the ALJ did not provide the special procedure mandated under 20 CFR 404.1520(a)." *See* ECF No. 26 at 11. Although the Appeals Council "vacate[d] the hearing decision," the Court finds that because the Appeals Council remanded on limited grounds unrelated to the ALJ's finding that Albanese did not have multiple sclerosis, the Court may consider the portions of the ALJ's first decision that provide pertinent discussion of the record supporting the ALJ's finding that Albanese did not have a medically determinable impairment of multiple sclerosis.[4]

That said, the Court need not determine whether the ALJ's finding that Albanese did not have multiple sclerosis was supported by substantial evidence. Instead, the Court concludes that the ALJ erred as a matter of law by not developing the record further with regard to the bases of Dr. Hagen's opinion or by requesting an additional medical examiner. As noted by Albanese, the ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented by counsel. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *see also DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) ("Disability hearings are not adversarial in nature."); *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987) (noting that the ALJ has the basic duty to "inform himself about facts relevant to his decision" (quoting *Heckler*

---

[4] Hearings, Appeals, and Litigation Manual ("HALLEX") is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members. *See Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000). HALLEX I-2-8-18 states that "[i]f the Appeals Council (AC) remands a case to the hearing level after a court remand, it generally vacates the entire administrative law judge (ALJ) decision, and the ALJ must consider all pertinent issues de novo. When the AC vacates an ALJ decision in an initial entitlement case, the AC will usually direct that the ALJ offer the claimant an opportunity for a new hearing and issue a new decision in the case." Similarly, HALLEX I-3-7-1 states that "[i]n most cases, the AC will vacate an ALJ's decision in its entirety when it remands a case. This action requires that an ALJ issue a new decision in the case. When remanding a case, the AC may also direct an ALJ to take certain actions, such as developing additional evidence or holding a supplemental hearing." The Appeals Council, however, "does not always vacate an ALJ decision in its entirety when remanding a case." HALLEX I-3-7-1. HALLEX does not prescribe substantive rules and therefore does not carry the force and effect of law. *See Moore*, 216 F.3d at 868-69. It is not binding on the Commissioner and courts need not review allegations of noncompliance with the manual. *Id.*

17

*v. Campbell*, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring))). When triggered, an ALJ may "discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open …" *Id*. The duty to develop the record is triggered only when evidence in the record is ambiguous or inadequate, so as to preclude a proper evaluation. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (holding that the duty to develop the record was triggered where the evidence suggested "obvious vicissitudes" in the claimant's health).

Albanese argues that the ALJ had a duty to develop the record when he found that Dr. Hagen's opinion was ambiguous or inadequate to make a determination as to Albanese's disability. *See* ECF No. 21 at 15*; see also Thomas*, 278 F.3d at 958; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The Court agrees. Based on the Court's above discussion of the record, and not the particular deficiencies of Dr. Hagen's opinion, the record was ambiguous or inadequate so as to preclude a specific determination on multiple sclerosis. The ALJ was required at a minimum to ask Dr. Hagen for clarification as to the bases of his opinions or to request an additional medical opinion.[5] The failure to do so constitutes reversible error. The Court therefore directs a remand for further development of the record with regard to Albanese's multiple sclerosis impairment, and for further appropriate proceedings in light of that additional development.

/ / /

/ / /

---

[5] Even if the ALJ here did not specifically find that the evidence of Albanese's multiple sclerosis was ambiguous, or that he lacked sufficient evidence to render a decision, he relied upon the testimony of Dr. Elsie Villaflor, who found just that. *See* Admin Rec. at 104 ("Diagnosis of MS is questionable."). Furthermore, Dr. Schmidt and Dr. Haven both similarly stated in reports that they were unsure whether she actually had multiple sclerosis. *Id*. at 542, 570. The ALJ was not free to ignore these equivocations and concerns over the lack of a complete record upon which to assess Albanese's alleged multiple sclerosis.

**C.  Whether the ALJ's Finding That Albanese did not Have a Medically Determinable Impairment of Fibromyalgia is Supported by Substantial Evidence?**

Albanese purportedly suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.  *See, e.g.*, *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004); *see also* Carolyn Kubitschek & Jon Dubin, *Social Security Disability Law and Procedure in Federal Court*, §§ 5:71-73 (2017).  Common symptoms include chronic pain throughout the body, multiple tender points, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia), fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease.  *Id.*; *see also* Soc. Sec. Ruling 12-2p (2012).  These symptoms are easy to fake.  *See Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996).  Few applicants for disability benefits are aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.  *Id.*  Some people may indeed have a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether the claimant is one of the minority.  *Id.*  The cause of fibromyalgia is unknown, there is no cure, and it is poorly-understood within much of the medical community.  The diagnosis of fibromyalgia is made entirely on the basis of patients' reports of pain and other symptoms.  *Id.*  To date there are no lab tests to confirm the diagnosis.  *See Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 872 (9th Cir. 2004).  With no objective test for fibromyalgia, the credibility of the claimant's testimony regarding her symptoms is of paramount significance.

The ALJ found that Albanese does not have a medically determinable impairment of fibromyalgia for two reasons.  *See* Admin. Rec. at 25-26.  First, the ALJ states that "there is no objective evidence from a specialist, such as a rheumatologist, or other medically acceptable source, showing the

particular signs such as tender points confirming the claimant has the condition." *Id*. Second, such "an impairment may not be established solely based on symptoms alone, or on the claimant's allegations regarding symptomatology." *Id*.

Albanese challenges the ALJ's finding and directs the Court to an emergency room record which includes "diagrams with eight points on her legs where … [Albanese] has pain" and a diagnosis by Dr. Susan Miko with fibromyalgia. *See* ECF No. 26 at 7; *see also* Admin. Rec. at 371. The Commissioner argues that "though Fibromyalgia is referenced in the discharge instructions," there is "no indication of this as a diagnosis of Plaintiff's condition in the evaluation." *See* ECF No. 22 at 5. The Court agrees. The emergency room record indicates that Albanese had mild pain marked on 8 points on her lower body. *See* Admin Rec. at 371. Dr. Miko noted that Albanese's lower extremities and abdomen were "non-tender." *Id*. at 372. In the discharge instructions, fibromyalgia is indeed listed. *Id*. at 377. However, this is not a diagnosis as Albanese argues. Dr. Miko noted that "Crestor medicine" is "probably causing your muscle pains. Also your labs show that you are drinking too much alcohol." *Id*.

Albanese also argues that Dr. Hagen and Dr. Schmidt stated that she has fibromyalgia. *See* ECF No. 26 at 7. Albanese fails to direct the Court to any document in the record showing Dr. Schmidt made such a finding. Nor has this Court found any such instance based on its own review. The Commissioner persuasively argues that the physical capacities evaluation form where Dr. Hagen indicates fibromyalgia as one of the bases for Albanese's fatigue is without any citation to evidence supporting this statement. *See* ECF No. 22 at 5. Dr. Hagen indicated that Albanese "has had significant decline over past 1 year." *See* Admin. Rec. at 683. The Commissioner acknowledges that Dr. Hagen referenced that her balance issues were likely related to multiple sclerosis combined with fibromyalgia and neuropathy. *See* ECF No. 22 at 4; *see also* Admin. Rec. at 706. Thus, the Commissioner argues that there "is no specific medical evaluation in the record that goes to support a diagnosis of fibromyalgia." *Id*. In addition, the

ALJ discounted the treating physician Dr. Hagen and rendered an adverse credibility determination for Albanese as previously discussed. The Court cannot conclude that the ALJ erred in finding Albanese's fibromyalgia diagnosis not "medically determinable."

**D. Whether the ALJ's Finding That Albanese did not Have a Medically Determinable Mental Impairment of Depression is Supported by Substantial Evidence?**

Albanese challenges the ALJ's finding that she did not have a medically determinable psychiatric disorder, in particular depression that, with consistent treatment, significantly limited her ability to perform work-related activities for 12 months or longer. *See* Admin. Rec. at 17-18. Albanese argues that such a finding is not supported by substantial evidence. *Id*. The Court disagrees and concludes that the ALJ's finding that Albanese did not have depression is supported by more than a scintilla of evidence.

The ALJ based his determination on a few reasons. First, the ALJ stated that Albanese "did not seek much treatment … for psychiatric disorders" and "she told her treating physician she was doing fine on medication." *Id*. at 26. The ALJ also observed that Albanese initially "did not describe having significant mental impairment" and that examiners "failed to observe signs of significant psychiatric disorder." *Id*.

The ALJ gave significant weight to the DDS non-examining psychiatric consultants. *Id*. at 27. In October 2011, Dr. Susan Kotler stated that Albanese "has a hx of anxiety, depression, and alcohol abuse, but there is no current evidence of mental sx, dx, or tx, and the description of functioning does not indicate severe limitations from mental sx." *Id*. at 86, 94. Another consultant, Dr. Pastora Roldan, made an identical finding regarding Albanese's mental impairments in January 2012. *Id*. at 105.

To the contrary, the ALJ assigned Dr. Hagen's opinion that Albanese "had markedly limited ability to perform mental tasks" little weight. *Id*. at 28. The ALJ explained that he did so because Dr.

Hagen's opinions were not consistent with, nor supported by, the overall record. *Id*. The ALJ found that Dr. Hagen did not see Albanese very often and instead relied heavily on Albanese's subjective reports of symptoms and limitations. *Id*. As noted by the ALJ, "there are several reasons for discounting the credibility of the claimant's subjective allegations" of symptoms. *Id*. The Court has found that the ALJ's credibility determination was proper. The ALJ noted that Dr. Hagen's treatment notes contain few actual examinations of Albanese. *Id*. Lastly, although Dr. Hagen prescribes psychotropic medications, the ALJ stated that he is not a psychiatrist. *Id*.

The Commissioner directs the Court to a November 2007 report from Dr. Enrique Alfaro. *See* Admin. Rec. at 564. After examining Albanese, Dr. Alfaro stated that Albanese "does have a fair amount of depression, which is situational at this point. She just recently, and over the last two years, has been working through a 'nasty divorce' and thus the depression as a result." *Id*. On the other hand, Albanese points to her neurologist Dr. Schmidt who indicated after examining Albanese that she had depression. *Id*. at 542. Dr. Schmidt also noted that Albanese "was divorced" and "a continuing alcoholic drinker" drinking "3-4 Vodkas a day." *Id*. at 541. In any event, the Court finds that the ALJ's finding that Albanese did not suffer from a severe mental impairment was based upon substantial evidence.

**E. Whether the ALJ Properly Considered the Combined Effect of Albanese's Impairments?**

Albanese argues that the ALJ committed legal error by failing to discuss the combined effect of Albanese's mental and physical impairments at any step in the sequential evaluation process. *See* ECF No. 21 at 22. The Commissioner contends that the ALJ considered Albanese's impairments in combination when he determined at step 3 that her impairments did not meet or equal the severity of an impairment listed under 20 C.F.R. Part 404, Subpart 1, App. 1. *See* ECF No. 22 at 8-9. The

Commissioner also asserts that the ALJ identified all limitations supported by the record in assessing Albanese's RFC as well as in the ALJ's hypothetical posted to the vocational expert. *Id.*

At step two, the ALJ must consider the combined effect of all of the claimant's impairments in determining severity, regardless of whether any individual impairment is severe or not severe. *See* 42 U.S.C. § 423(d)(2)(B) (requiring consideration of the "combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient] severity"); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Where a claimant suffers from both physical and mental impairments, the ALJ must consider the physical and mental impairments together in determining severity. *Id.*; *see also Nguyen v. Chater*, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996). The ALJ is required under current law "to consider all of the limitations imposed by the claimant's impairments, even those that are not severe," because in combination with other impairments, non-severe limitations may contribute to rendering a claimant disabled. *See Carmickle*, 533 F.3d at 1164.

The ALJ determined at step two that Albanese had only one severe medically determinable impairment: a history of neuropathy. *See* Admin Rec. at 25. An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *See* Soc. Sec. Ruling 96-4p. A "symptom," on the other hand, is not a "medically determinable physical or mental impairment" and no symptom can by itself establish the existence of an impairment. *Id.*; Soc. Sec. Ruling 96-3p (1996) (stating that symptom-related restrictions must be considered in determining severity, provided that the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms.). The ALJ determined that multiple sclerosis, fibromyalgia, and osteoarthritis were not medically determinable impairments due to a lack of objective evidence in the record. Hypertension, hypothyroidism, and an

overweight condition were all medically determinable impairments that the ALJ determined to be non-severe. The ALJ further determined that Albanese did not have severe impairments related to substance abuse or other severe psychiatric conditions.

The Court previously found that the ALJ failed to fully develop the record with respect to his multiple sclerosis finding and recommends that this case be remanded for further evaluation on that issue. Additionally, the Court finds that the ALJ failed to consider the combined effect of all of Albanese's impairments on her ability to function, without regard to whether each alone was sufficiently severe. *See Smolen*, 80 F.3d at 1290. The ALJ properly discounted the testimony of Albanese and her sister[6] regarding her symptoms, so the ALJ did not fail to consider Albanese's subjective symptoms in making the severity determination. But the ALJ failed to discuss how the combination of Albanese's severe impairment, neuropathy, and non-severe impairments such as hypertension, hyperthyroidism, or psychiatric disorders affected her ability to do basic work activities as required. The ALJ's finding that Albanese suffered from only one severe impairment—and, implicitly, that the combination of her other impairments was "not severe"—is therefore not supported by substantial evidence.

In addition to insufficiently discussing the combination of severe and non-severe impairments at step two, the ALJ failed to do so at step three. The Ninth Circuit has held that in "determining whether a combination of impairments establishes equivalence" under step three of the listings, the ALJ "must explain adequately his evaluation of alternative tests and the combined effects of the impairments and a mere statement that … [claimant] did not equal the listing … [is] insufficient." *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). An ALJ who provides no more than a superficial or perfunctory analysis of the listing, commits reversible error.

The ALJ made this finding as to medical equivalence:

---

[6] *See*, *supra*, n.3.

24

> Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1… Her impairment does not meet a listing such as those under 11.00 because medical records fail to show that it meets the specific medical requirements.

Albanese argues that this finding is insufficient. She is correct.

In determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must make sufficient findings of the combined effects of the impairments. The ALJ must explain adequately his evaluation of the combined effects of the impairments. The ALJ's brief statement was insufficient.[7]

The Court remands the case to the ALJ to properly consider and address in sufficient detail the combination of severe and non-severe impairments at appropriate steps in the sequential evaluation. *See Marcia*, 900 F.2d at 176 ("When the Commissioner is in a better position than this court to evaluate the evidence, remand is appropriate."). For example, on remand, if the ALJ finds, after addressing the deficiencies identified elsewhere, that Albanese's impairment or combination of impairments equals a listing, Albanese is entitled to benefits. If the ALJ determines that Albanese's medical evidence is insufficient to raise a presumption of disability, he should continue the disability evaluation to steps four and five.

---

[7] The Commissioner also argues that "the ALJ further identified … all the limitations supported by the record in assessing Plaintiff's [RFC]." ECF No. 22 at 9. The Court does not agree. Under Ninth Circuit precedent, in determining RFC, the ALJ must take into account the claimant's testimony regarding her capabilities and consider all relevant evidence, including medical records, lay evidence, and pain. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."). This includes consideration of the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe. *See, e.g., Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. Specific RFC findings as to what functions the claimant is capable of performing must be made by the ALJ. Conclusory statements as to the claimant's abilities will not do. The ALJ's formulation of the RFC did not sufficiently discuss the combination of severe and non-severe impairments.

**F. Whether the ALJ Used the Special Procedures Under 20 C.F.R. § 404.1520a?**

Section 404.1520a requires those reviewing an application for disability to follow a special psychiatric review technique. The ALJ must determine whether an applicant has a medically determinable mental impairment, § 404.1520a(b), rate the degree of functional limitation for four functional areas, § 404.1520a(c), determine the severity of the mental impairment, § 404.1520a(d), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder, § 404.1520a(d)(2).

At the initial and reconsideration levels of the administrative review process, this technique is documented in a Psychiatric Review Technique Form ("PRTF"). *See* 20 C.F.R. § 404.1520a(e). At hearings before an ALJ or the Appeals Council, however, the Commissioner must "document application of the technique in the decision" by incorporating "the pertinent findings and conclusions based on the technique" and "must include a specific finding as to the degree of limitation in each of the functional areas." *Id*. In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a "narrative rationale," instead of the "checklist of ... conclusions" found in a PRTF. *See Keyser v. Comm'r Soc. Sec. Admin*., 648 F.3d 721, 725 (9th Cir. 2011).

Albanese contends that the ALJ failed to comply with § 404.1520a by not using the special procedures to determine whether Albanese's mental impairments limited her ability to function. *See* ECF Nos. 21 at 24-25; 26 at 11.

The ALJ found that Albanese did not have medically determinable psychiatric disorders that, with consistent treatment, significantly limited her ability to perform work-related activities for 12 months or longer. *See* Admin Rec. at 26. The ALJ noted that Albanese "did not seek much treatment at all for psychiatric disorders," "told her treating physician she was doing fine on medication," and that

examiners "failed to observe signs of significant psychiatric disorder." *Id*. In making his finding, the ALJ considered the four functional areas set out in § 404.1520a(c) and assessed Albanese's degree of limitation in those areas. *Id*. at 26-27. The ALJ concluded that because Albanese's "medically determinable mental impairments caused no more than mild limitation in any of the first three functional areas and "no" episodes of decompensation which have been extended duration in the fourth area, they were non-severe." *Id*. at 27. The ALJ also weighed the different medical opinions, crediting the two DDS non-examining psychiatric consultants and assigning little weight to treating physician Dr. Hagen's opinion that Albanese "had markedly limited ability to perform mental tasks" for reasons discussed earlier.

Albanese argues that the ALJ ignored "the Doctor's statements that she is near vegetation in her depression, or her sister's statement she is depressed and paranoid, or her own statements to her doctors." ECF No. 21 at 24. But the Court previously determined that the ALJ properly discounted the treating physician's opinions and Albanese's sister's lay testimony. Further, the ALJ's finding that Albanese's statements on, *inter alia*, her subjective symptoms were not credible was deemed by this Court not to be done in error. The Court concludes that the ALJ properly used the special procedures to consider Albanese's impairments under § 404.150a.

## G. Step 5 Analysis

Albanese argues that the Commissioner has the burden at step five to show that there are significant jobs at which Albanese could work. *See* ECF No. 21 at 25-26. Because the ALJ did not discuss suitable jobs, Albanese argues that he did not meet his burden. *Id*. This argument fails as a matter of law. In his analysis, the ALJ never reached step five because he specifically concluded at step four that Albanese has the RFC to do her past relevant work, and therefore was not disabled. *See*

Admin. Rec. at 29.  Only if the claimant is not able to do any past relevant work does the analysis proceed to the fifth step.

## H.  Instructions on Remand

The District Court's judicial review of the Commissioner's decision to deny benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence.  Having reviewed the Administrative Record and Ninth Circuit law, the Court finds that this matter should be remanded for further administrative proceedings.  The ALJ erred in his step two assessment of multiple sclerosis, in particular, by not fully developing the record to clarify any ambiguity in the medical evidence and opinions associated with Albanese's alleged multiple sclerosis.  The ALJ erred by not addressing in sufficient detail the combination of severe and non-severe impairments at appropriate steps in the sequential evaluation process.  Because it cannot be said that the ALJ's errors were inconsequential to the ultimate nondisability determination, they may not be deemed harmless.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  Accordingly, the ALJ's decision is VACATED and the case is REMANDED to the ALJ for further proceedings consistent with this order.[8]

/ / /

/ / /

/ / /

---

[8] The Court finds that the credit-as-true doctrine is not appropriate in this case.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-1102 (9th Cir. 2014).

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Albanese's Motion for Summary Judgment (ECF No. 21) be GRANTED and the case be remanded for further proceedings consistent with the terms of this report and recommendation.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross-Motion to Affirm (ECF No. 22) be DENIED.

IT IS SO RECOMMENDED.

DATED this 8th day of June, 2017.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE